The People of Puerto Rico, Plaintiff and Appellee, *v.* Daniel Montalvo, Defendant and Appellant.

No. 8461.   Argued February 5, 1941.—Decided March 21, 1941.

*A. Reyes Delgado* and *P. Santos Borges,* for appellant.   *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for *The People,* appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On November 20, 1937, the District Attorney of Arecibo filed an information against Daniel Montalvo alleging a violation of Section 3 taken in conjunction with Section 6 of Act No. 14 of 1936, page 128, to regulate the sale of firearms; to order their declaration however they may be possessed; to prohibit the delivery thereof to certain persons and to impose penalties and for other purposes, approved by the Third Special Session of the Thirteenth Legislature of Puerto Rico on July 8, 1936, committed in the following manner:

"The said accused, Daniel Montalvo, previous to the filing of this information, to wit, on or about one of the days of the month of August, 1937, in Arecibo, Puerto Rico, which forms a part of the judicial district of the same name, illegally, voluntarily, maliciously and criminally and with criminal intent sold to Pedro Camacho a firearm described as follows: Smith revolver, caliber 38, nickel plated with black butt plates and numbered 22782, without complying with the provisions of the aforesaid law, that is, that he delivered said firearm in sale before forty-eight hours had elapsed from the moment in which said Pedro Camacho requested the sale of it; nor did he sign nor place his address on said declaration, nor in any other place within the six hours following the receipt of the same, nor did he send a copy by certified mail to the Chief of Police of Arecibo, Puerto Rico, which is the district in which the vendor resides; nor did he send a duplicate of said declaration to the Attorney General of Puerto Rico within seven days of the making of said declaration; and he did deliver said arm to the purchaser without the latter's having delivered to him a sworn declaration containing his complete name, place of birth, address, occupation, race, place, date and hour of the declaration and the caliber, trade mark, model and factory number of the firearm which was going to be sold and a statement that he had never been convicted of a felony."

The accused demurred to the information alleging that it was insufficient and did not impute any violation of Sections 3 and 6 of Act No. 14 of 1936, and also because it was ambiguous, unintelligible and doubtful and because more than

one offense was charged. The demurrers were overruled by order of May 18, 1939.

The trial was held and judgment was rendered on August 4, 1939, finding the accused guilty of a violation of Section 6 taken together with Section 3 of Act No. 14 of July 8, 1936 and sentencing him to six months in jail and the payment of the costs. Montalvo appealed. He alleged that the lower court committed five errors in admitting the revolver presented by the district attorney in evidence, in taking part in the cross-examination of the defense, in not allowing a third revolver to be presented, in deciding that Pedro Camacho was not an accomplice and in dismissing the motion for a nonsuit and finding the accused guilty and imposing sentence of six months in jail.

In arguing the first alleged error, it is stated that the court erred in admitting the revolver presented by the district attorney in evidence because it was not shown that it was the revolver registered as his own by the accused.

We have examined the evidence and in our opinion, the identity was proven. The firearm was admitted not only after the testimony of the Policeman Vicente de Jesús and that of Chief of Police Antonio Monteserín and of the further testimony of the latter with the district register where the declarations of firearms are entered and referring especially to the entry which appears on page 918 and which states: "I Certify: that Daniel Montalvo, white, a merchant whose address is Avenida Obreros, has presented in accordance to the provisions of Section 7 of Act No. 14 of July 8, 1936, a declaration as to the following firearm which is in his possession: Kind—Revolver, 38 caliber; Trade Mark—Smith & Wesson; Factory No.—2278-2 or that it has engraved according to the declaration of said person his complete name on the rear of the same—Salvador G. López de Azúa, District Chief", but also after the testimony of Pedro Camacho, who identified it as the firearm possessed by the accused.

The fact that in the registry it was stated that the revolver was one of the trade mark Smith & Wesson and one of the witnesses, the Policeman de Jesús, stated that the firearm seized from Camacho and presented by the district attorney was "a Smith revolver" and Chief Monteserín also described it as a "Smith system" and later stated that the Smith & Wesson is of a better kind (*es más patente*) than the Smith, and the circumstance that the serial number was recorded in the registry as "2278-2" and in the information and on the revolver presented in evidence it appears as "22782", that is, without any dash, has no importance if it is considered that the description in the registry and the revolver substantially coincide and that the revolver was identified by Camacho as that bought by the accused, and by the policeman as that seized from Camacho. There was no error.

■ The second alleged error was not committed either and in any case, if it had been committed, it could not have been prejudicial. The defense was cross-examining the witness Monteserín and it showed him a revolver. The witness answered: "It says here Smith & Wesson." The judge intervened and said: "The court is going to strike that. Now the defense may bring him as a witness with that other revolver." The incident was prolonged and finally the accused took an exception.

We believe that the order of presentation of evidence was altered by presenting on cross-examination elements of proof which were not brought out in the direct examination and therefore, that the rule of the court was within the law, but even if this were not so and we should decide that the cross question should have been permitted, especially as the district attorney, in order not to lose time had agreed to it, we would still have to hold that the error was not prejudicial because the court repeatedly emphasized that the defense could later present the revolver to the witness and examine him in regard to the same, and the defense did nothing.

320

■ The third and fourth errors may be considered together. It is alleged that Camacho, the person who testified that he had purchased the revolver from the accused, is an accomplice and that his testimony was not corroborated. For this reason and for the lack of identification of the firearm which we have already decided against the appellant, the acquittal of the accused was requested in a motion for directed verdict.

In dismissing the motion, the court in part, stated as follows:

"The only argument of some importance is whether with the testimony of the accomplice the accused could be condemned, but the court is of the opinion that when a revolver is sold by one person and another purchases it, two distinct offenses are committed: one in selling, and the other in buying, and that in the sale, the witness cannot be an accomplice of the accused."

The opinion of the lower court is correct. It is in accord with the facts and the law and is upheld by the decisions. In the case of *Forastieri* v. *Calzada*, 53 P.R.R. 238, this Court held that:

"Since giving and receiving a bribe are separate and distinct offenses, the giver and receiver of a bribe are not accomplices under the rule requiring corroboration of the testimony of an accomplice."

In the course of the opinion, the rule on this matter was studied and the case of *State* v. *Durnam*, 73 Minn. 150, was cited as it appeared in 73 A.L.R. 392, to wit:

"Likewise, in *State* v. *Durnam*, (1898), 73 Minn. 150, 75 N.W. 1127, 11 Am. Crim. Rep. 179, which appears to be the source of the reasoning used in the later California cases, the court said: 'Each of the two parties to a transaction may be guilty of a crime, and yet, if the crimes are separate and distinct crimes, the one is not the accomplice of the other. Thus, suppose A asks B for a bribe, and B pays it. A is guilty of the crime of asking a bribe, and B of the crime of giving one. But the two crimes are entirely distinct, and neither party could be indicted, either as principal or accessory, for the crime committed by the other. Such a case would not be

within the statute forbidding a conviction on the uncorroborated evidence of an accomplice although, of course, the moral delinquency of either, if called as a witness against the other, would be a fact going to his credibility, which a jury should take into consideration,' even though there was no statutory definition of an 'accomplice', in that state, as there was in the later California cases.''

Although two distinct violations are involved, we consider the reasoning applicable to this case to hold that the purchaser and the vendor do not conspire to carry out a viola- tion as the appellant states, but that they incur in two dis- tinct violations punishable separately and therefore, that they are not accomplices.

Besides, the question of whether Camacho was or was not an accomplice, did not have to be decided because even though he were an accomplice, his testimony was corrobo- rated.

The errors were not committed, and neither was the fifth and last, wherein the judgment as a whole is assailed.

■ From what we have stated, it can be seen that the evidence was sufficient to uphold the judgment; and in re- gard to the interpretation of the Act, as applied to the facts of the case for the purpose of imposing sentence, it is suf- ficient to copy the statements of the judge of the lower court in his judgment. They are as follows:

''In regard to the sentence which we should impose upon the accused, the law, taking into consideration the manner of the draw- ing up of the information, presents certain ambiguities.

''Section 6 provides that the purchaser or vendor of a firearm in violation of the Act shall be punished with a minimum sentence of two years in jail and a maximum sentence of six years (sic); but immediately thereafter it says that the violations of the provisions of the law which are purely regulatory in character contained in the preceding Sections shall be punished according to the provisions of Section 10. This latter Section provides for a minimum sentence of six months and a maximum of two years, from which it excepts only the contraband sale of firearms.

''The information alleges that the accused committed a violation of Section 3 taken together with Section 6. Section 3, as well as

the text of the information, refer to regulatory requisites which the accused had to comply with to sell the firearm. If Section 6 says at the end that the violation of regulatory provisions *contained in the preceding Section,* (including Section 3) shall be punished by a sentence of six months to two years, it appears to us that the intention of the legislator was to punish with a minimum sentence of two years when sale of firearms was contraband and not a simple sale, in which through negligence, the police is not notified of the sale, as appears in this case. This conclusion is strengthened when it is considered that a punishment of two to six years for a lack of notice implies a severe punishment."

The appeal must be denied and the judgment appealed from affirmed in all its parts.

Mr. Justice Todd, Jr., took no part in the decision of this case.